UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI
EASTERN DIVISION

WILLLIAM D.,                          )
                                     )
            Plaintiff,                )
                                     )
    v.                                )      No.  4:18 CV 1735 JMB
                                     )
                                     )
ANDREW M. SAUL,[1]                    )
Commissioner of Social                )
Security Administration,              )
                                     )
            Defendant.                )

## MEMORANDUM AND ORDER

This action is before the Court pursuant to the Social Security Act, 42 U.S.C. §§ 401, *et seq.* ("the Act").  The Act authorizes judicial review of the final decision of the Social Security Administration denying Plaintiff William D.'s ("Plaintiff") application for disability benefits under Title II of the Social Security Act, see 42 U.S.C. §§ 401 et seq.  All matters are pending before the undersigned United States Magistrate Judge with the consent of the parties, pursuant to 28 U.S.C. § 636(c).  Substantial evidence supports the Commissioner's decision, and therefore it is affirmed.  See 42 U.S.C. § 405(g).

## I.  Procedural History

On October 11, 2017, Plaintiff filed an application for disability benefits (Tr. 157-60), arguing that his disability began on April 27, 2015, as a result of post-traumatic stress disorder ("PTSD"), left knee patellofemoral syndrome and osteochondral, bilateral hearing loss, tinnitus,

---

[1] After the case was filed, a new Commissioner of Social Security was confirmed.  Pursuant to Rule 25(d) of the Federal Rules of Civil Procedure, Andrew M. Saul is substituted for Deputy Commissioner Nancy A. Berryhill as the defendant in this suit.

right elbow epicondylitis, left wrist tendonitis, lumbar radiculopathy of the lower extremities, and lumbosacral strain. (Tr. 68, 85, 157-60) On December 7, 2017, Plaintiff's claims were denied upon initial consideration. (Tr. 85-89) Plaintiff then requested a hearing before an Administrative Law Judge ("ALJ"). Plaintiff appeared at the hearing (with counsel) on May 15, 2018, and testified concerning the nature of his disability, his functional limitations, and his past work. (Tr. 34-66) The ALJ also heard testimony from Dr. Thomas Upton, a vocational expert ("VE"). (Tr. 60-65, 314-26) The VE opined as to Plaintiff's ability to secure other work in the national economy, based upon Plaintiff's functional limitations, age, and education. (Id.) After taking Plaintiff's testimony, considering the VE's testimony, and reviewing the evidence of record, the ALJ issued a decision on May 23, 2018, finding that Plaintiff was not disabled, and therefore denying benefits. (Tr. 9-29)

Plaintiff sought review of the ALJ's decision before the Appeals Council of the Social Security Administration ("SSA"). (Tr. 1-5) On September 7, 2018, the Appeals Council denied review of Plaintiff's claims, making the May 23, 2018, decision of the ALJ the final decision of the Commissioner. Plaintiff has therefore exhausted his administrative remedies, and his appeal is properly before this Court. See 42 U.S.C. § 405(g).

In his brief to this Court, Plaintiff raises two issues. First, Plaintiff challenges the ALJ's use of his unsuccessful work attempts between April 27, 2015, and September 1, 2017, as evidence showing his ability to work. Next, Plaintiff argues that the ALJ improperly considered the medical opinion evidence in determining his Residual Function Capacity ("RFC").[2] The Commissioner filed a detailed brief in opposition.

---

[2] Plaintiff challenges the RFC only in regard to the ALJ's assessment of his mental limitations. Plaintiff does not contest the ALJ's determination of the degree to which his physical impairments affected his RFC.

As explained below, the Court has considered the entire record in this matter. Because the decision of the Commissioner is supported by substantial evidence, it will be affirmed.

## II.   **Forms Completed by Plaintiff**

In a Function Report - Adult, dated November 14, 2017, Plaintiff reported that he is unable to work because of his mental conditions. Plaintiff indicated that he does the laundry and washes the dishes.

In a Function Report Adult - Third Party, dated November 14, 2017, Plaintiff's wife, Jessica D. indicated that with respect to house and yard work, Plaintiff can do pretty much anything physically. Jessica D. listed watching television, playing games, and horseback riding as Plaintiff's hobbies. She explained that their social activities included playing online games with a group of five friends.

## III.   **Medical Records**

The administrative record before this Court includes medical records concerning Plaintiff's health treatment from November 16, 2016, through February 7, 2018, at a Veteran Affairs Medical Center ("VA Medical Center"). (Tr. 328-472, 476-501) The Court has reviewed the entire record. The following is a summary of pertinent portions of the medical records relevant to the matters at issue in this case. Plaintiff challenges the ALJ's evaluation of his mental condition. Because Plaintiff does not challenge the ALJ's evaluation of his physical impairments, discussion is limited to the following medical history relevant to this action.

Adjustment disorders, chronic low back pain, inactive chronic PTSD, depressive disorder, hearing loss, irritable bowel syndrome, lumbosacral strain, migraine, panic disorder, social phobia, neck muscle strain, suicidal thoughts, and tinnitus are the medical conditions listed on Plaintiff's Problem List at the VA Medical Center.

After being kicked by a horse, an x-ray of Plaintiff's lumbar spine on November 16, 2016, showed no fracture.

On December 1, 2016, Plaintiff saw Dr. James Jones to establish care as his primary care physician. Plaintiff reported being able to perform activities of daily living without assistance. Plaintiff reported a history of depression, anxiety, and chronic lower back pain, and he was not taking any medication for his back pain. During depression screening, Plaintiff indicated that he had never attempted suicide. Based on the evaluation, Dr. Jones found that Plaintiff did not have a mental health condition requiring further intervention. Dr. Jones reviewed an x-ray of Plaintiff's lumbar spine, and noted normal results. Dr. Jones diagnosed Plaintiff with chronic low back pain and offered a referral to pain management but Plaintiff declined. Dr. Jones noted that Plaintiff declined a referral to pain management due to a scheduling conflict. Dr. Jones scheduled an appointment with a patient aligned care team provider so Plaintiff could discuss his pain management options. Plaintiff reported that he wanted to establish care with a mental health care provider. On examination, Plaintiff had a full range of motion, 5/5 strength muscle power in all upper and lower extremities, a steady gait without assistive device, normal mood and affect, and tenderness across his spine but no overt deformities.

An x-ray of Plaintiff's left knee showed a slight irregularity on the lateral femoral condyle but no other abnormality on January 9, 2017. X-rays of Plaintiff's thoracic and lumbar spine showed a normal spine. Plaintiff reported having chronic back pain from a prior trauma. An MRI study of Plaintiff's spine showed minor abnormality on January 17, 2017. An x-ray of Plaintiff's lumbar spine showed mild scoliosis and mild retrolisthesis on April 5, 2017. An x-ray of Plaintiff's lumbar spine showed minimal posterior displacement, somewhat diminished lumbar mobility on flexion, and no instability on May 31, 2017.

On July 24, 2017, a treating doctor at urgent care ordered an x-ray of Plaintiff's head after he had been kicked in the head by a donkey. The treating doctor observed Plaintiff to be oriented to time, person, and place with a steady gait, and had the ability to move all extremities equally. The doctor advised Plaintiff to seek follow-up treatment with his primary care physician.

Plaintiff received psychotherapy and medication management from psychiatrist Dr. Joseph Sunny on August 30, 2017. Plaintiff reported continued anxiety and uncomfortable feelings in social situations. Plaintiff reported not being able to perform heavy work as a farrier because of back and leg pain. Dr. Sunny found his affective responses appropriate. Dr. Sunny diagnosed Plaintiff with social phobia and depressive disorder. Plaintiff reported that he had been taking his medications but his only refill of medications occurred on May 31, 2017. Dr. Sunny encouraged Plaintiff to make an appointment with his therapist but Plaintiff indicated that he wanted to change therapists. Dr. Sunny scheduled a follow-up appointment in three months.

During treatment in urgent care on August 30, 2017, Plaintiff reported pain in his left foot after a horse stepped on his foot. The treating doctor observed Plaintiff to be oriented to time, person, and place and to respond appropriately to environmental stimuli with the ability to move all extremities equally and a steady gait.

On September 20, 2017, Plaintiff saw Shawn Lee, a licensed clinical social worker, to reestablish mental health services. Plaintiff reported that he had contacted a crisis line after receiving some news from the Navy about his retirement benefits. Examination found Plaintiff had normal speech, orientation, memory, intelligence, and abstraction, exhibited appropriate and cooperative behavior, and had normal and logical thought content.

On September 25, 2017, Mr. Lee completed a mental health diagnostic study based on a self-report assessment by Plaintiff. Plaintiff's depression scale score warranted treatment using an

antidepressant, psychotherapy, and /or a combination of treatment. Being able to work and attend school/training were listed as Plaintiff's strengths. Included in his needs, Plaintiff indicated that he wanted to learn about what jobs he could perform. Plaintiff reported that he could perform activities of daily living. Examination showed his mood anxious with appropriate affect and behavior. Mr. Lee found Plaintiff to have normal concentration and insight/judgment. Plaintiff reported that his financial stress increased his depression and anxiety. Plaintiff also reported his dislike of large crowds and his need to sit with his back to the door when eating at restaurants. Mr. Lee recommended that Plaintiff continue with individual psychotherapy.

During treatment on October 16, 2017, Plaintiff reported being able to work and back pain at level four. Mr. Lee observed Plaintiff had an anxious mood and impaired concentration, insight, judgment, and memory. Mr. Lee encouraged Plaintiff to continue individual psychotherapy.

During a Compensation and Pension examination on October 17, 2017, Plaintiff explained how in February 2014 while working as a military police officer on a ship, he had all of his designation letters and qualifications stripped by an officer in charge in order for the officer to save face and not look like a fool. As a result, within a five minute time period, Plaintiff's Navy career ended, causing him to contemplate suicide. After being evacuated off the ship for suicidal ideation, Plaintiff was hospitalized and transferred to the temporary disability retired list on April 28, 2015, and thereafter honorably discharged. Plaintiff reported keeping in contact with two military buddies and one childhood friend and graduating at the top of his farrier class.

During a Compensation & Pension examination completed on behalf of the VA to evaluate Plaintiff for his VA disability rating, Dr. Sarah Wahl found that Plaintiff did not meet the criteria in the Diagnostic and Statistical Manual of Mental Disorders ("DSM-5") for a diagnosis of PTSD based on her evaluation because he did not meet Criterion A for PTSD, which requires exposure

to actual or threatened death, serious injury, or sexual violence. Dr. Wahl opined that '[i]n the setting of a more professional environment[, Plaintiff] is also able to participate in social activities such as working a haunted cornfield…." (Tr. 359) Dr. Wahl listed major depressive disorder, chronic sleep impairment, flattened affect, disturbance of motivation and mood, difficulty establishing and maintaining effective work and social relationships, difficulty adapting to stressful circumstances, including work or a work-like setting, social anxiety (social phobia), as Plaintiff's diagnoses. With respect to Plaintiff's anxiety disorder, Dr. Wahl opined that "this condition resolved almost completely with removal from a ship environment but would undoubtable return if returned to a close quarter's environment." (Tr. 360) Dr. Wahl opined, that "[b]oth his major depressive disorder and social anxiety result in moderate functional impairment." (Tr. 365)

During a Compensation and Pension examination on October 17, 2017, Dr. Donna Coffman opined that the current examination and findings would not be expected to preclude all types of sedentary and active work because of Plaintiff's lumbosacral strain and back pain. Dr. Coffman reviewed a January 2017 MRI and noted Plaintiff had no nerve-root compression or spinal cord compression and only minimal degenerative changes at L5/S1 and an x-ray showed no degenerative changes of his lumbar spine, only mild retrolisthesis.

During treatment on October 18, 2017, Mr. Lee completed a mental health diagnostic study and a Beck anxiety inventory based on a self-report assessment by Plaintiff. Plaintiff reported that his stress and anxiety levels had decreased. Plaintiff's Beck Anxiety Inventory score placed him in the severe anxiety range. Being able to work and attend school/training are listed as Plaintiff's strengths. Included in his needs, Plaintiff indicated that he wanted to learn about what jobs he could perform. Plaintiff reported that he could perform activities of daily living and was able to

participate in social activities such as working at a haunted cornfield during Halloween. Examination showed his mood anxious with appropriate affect and behavior. Mr. Lee found Plaintiff to have normal concentration and insight/judgment. Plaintiff reported that his financial stress increased his depression and anxiety. Mr. Lee opined, that although Plaintiff's symptoms were consistent with a PTSD diagnosis, he agreed with Dr. Wahl that Plaintiff did not have PTSD because he did not have any of the Criterion A symptoms listed in DSM-5. Dr. Wahl found that Plaintiff's social anxiety resulted in a moderate functional impairment.

In follow-up treatment with Mr. Lee on November 2, 2017, Plaintiff reported being able to work, to perform activities of daily living, and to engage regularly in leisure or recreational interests. Plaintiff reported his financial problems and marital/relationship discord were significant psychosocial and contextual factors. Mr. Lee found Plaintiff's barriers to care to be limited/lack of income, lack of support network, and marital/relationship discord. Plaintiff reported that he had been "experiencing thoughts of harming myself when I feel stressed by a wide variety of problems in my life, but especially if I feel like I am failing something." (Tr. 341) Mr. Lee identified constructive plans for handling Plaintiff's distress. Plaintiff returned for treatment on November 21, 2017, and Mr. Lee observed Plaintiff's mood and affect were congruent and good and his thoughts were goal oriented.

In follow-up treatment on January 8, 2018, Plaintiff reported having no pain. Plaintiff indicated that he had hobbies, he enjoyed riding horses, and he was able to perform activities of daily living. Plaintiff reported that a female Navy friend now lived with his family. Although Mr. Lee advised Plaintiff to continue his medication regimen to help his depression and anxiety, Plaintiff questioned whether he needed to take medications. Plaintiff returned for treatment on February 7, 2018, and reported having no pain. Although Plaintiff reported he was doing well, a

few weeks earlier he had a high level of suicidal ideation after a miscommunication with his friend/roommate, causing a rift with his wife. When asked by Mr. Lee, Plaintiff denied having any suicidal ideation at that time. Mr. Lee made no changes in Plaintiff's treatment plan.

## IV. Opinion Evidence

### A. Shawn Lee

Between September 20 and November 21, 2017, Mr. Lee treated Plaintiff on five occasions and then again on January 8 and February 7, 2018. On December 4, 2017, Mr. Lee completed a Medical Source Statement of Ability to do Work-Related Activities (Mental) ("MSS") in a checklist format and answered questions regarding Plaintiff's mental impairments. (Tr. 472-75) Mr. Lee opined that Plaintiff had no limitations in his ability understand, remember, and carry out instructions, but marked limitations in most aspects of social functioning, such as his ability to respond to supervisors, coworkers, and work pressure. Mr. Lee found that Plaintiff meets all the criteria for a PTSD diagnosis, except for criterion A, and therefore, his diagnosis is adjustment disorder with mixed emotional features. Mr. Lee further opined that Plaintiff has difficulty interacting with others and would become emotionally dysregulated, resulting in Plaintiff being unable to function in a work environment or with others. Mr. Lee also opined Plaintiff becomes overwhelmed, angry, and unable to function in a work-setting when he cannot process information in a timely manner. In support of these limitations, Mr. Lee cited the DSM-V and his observations during therapeutic sessions.

### B. Dr. Robert Cottone

Dr. Cottone, Ph.D., a state agency psychologist, reviewed the medical record as of December 1, 2017. (Tr. 67-81) Dr. Cottone noted that Plaintiff had the diagnoses of social anxiety disorder and major depressive disorder, and he received treatment through counseling and

medications. Dr. Cottone noted that an evaluation in October, 2017, revealed adjustment disorder and narcissistic personality disorder. Dr. Cottone noted that the medical records show "his condition resolved almost completely with removal from a ship environment but would undoubtedly return if returned to a close quarter's environment." (Tr. 72) Dr. Cottone expressed the opinion that Plaintiff's activities of daily living "indicate limitations with memory, completing tasks, concentration, understanding, following instructions, and getting along with others." (Id.) Dr. Cottone opined that Plaintiff's "reported limitations are more limiting than the objective evidence supports." (Id.) Dr. Cottone found that Plaintiff could reasonably be limited to simple repetitive tasks away from the public.

Dr. Cottone further opined that Plaintiff had moderate difficulties in his ability to work in coordination with or in proximity to others, to carry out detailed instructions, to understand and remember detailed instructions, to interact with general public, and to accept instructions and respond appropriately to criticism from supervisors. Dr. Cottone explained that Plaintiff "can relate acceptably to others at a basic level, but will be best suited for a job with moderately limited social demands." (Tr. 78) Dr. Cottone further explained that Plaintiff could adapt to normal changes in a basic work routine, and he could relate adequately to coworkers or supervisors.

## C. **Dr. Dennis McGraw**

Dr. McGraw, a state agency medical consultant, reviewed the medical record as of the date of his opinion and found that Plaintiff could perform work at the light exertional level with additional nonexertional limitations. Dr. McGraw noted that examinations showed Plaintiff had 5/5 strength, negative straight leg raising, normal sensory, normal gait, and reduced range of motion of his lower spine. Dr. McGraw opined that Plaintiff's reported limitations were more limiting than the objective evidence supports.

## V.     The Hearing Before the ALJ

The ALJ conducted a hearing on May 15, 2018.  Plaintiff was present with an attorney and testified at the hearing.  The VE also testified at the hearing.

### A.     Plaintiff's Testimony

Plaintiff began his testimony by noting that he completed high school, and he earned a certificate in horseshoeing from a farrier school in February 2017.  (Tr. 38, 41)  Plaintiff has a driver's license with no medical restrictions, but he only drives once or twice a week to go to the park or to go fishing.  (Tr. 50)  Plaintiff served seven years in the Navy as a military police officer. (Tr. 46)  He worked as gate and/or patrol protective service details, and he was stationed onboard a ship as watch commander.  (Tr. 46)  After an incident on a ship caused him to attempt suicide, the Navy removed him from the ship.  After a year of no improvement in his mental state, Plaintiff testified that the Navy medically discharged him and he now receives monthly military benefits. (Id.)

After being medically separated from the Navy, Plaintiff testified that he worked for three months selling cars, but he left this job because of the stress of sales quotas.  (Tr. 45)  Next, Plaintiff worked as a route sales representative for two months, working twelve hours a day going door-to-door selling food products.  (Tr. 42-43)  Plaintiff stopped working this job due to stress of having to meet daily sales minimum.  (Tr. 43)  Next, Plaintiff worked in a call center as sales support for two months, but he left this job due to stress from having to deal with irate customers and feeling suicidal.  (Tr. 44)  Plaintiff testified that he attended farrier school from September 2016, through February 2017, five days a week.  (Tr. 41-42)  His course work required him to lift 100 pounds.

(Tr. 52)  According to Plaintiff, he worked fifteen to twenty hours weekly as a farrier, but he closed his business in August 2017 due to back problems.  (Tr. 41-42)

Plaintiff stated that his inability to focus, to deal with stress and criticism in a healthy way, and be around more than six people prevented him from working.  (Tr. 47)  Plaintiff further testified that lower back problems and left knee pain also prevented him from working.  (Tr. 51)  Plaintiff explained that any strenuous activity, such as shoeing horses or lifting more than fifteen to twenty pounds, resulted in extreme pain in his back.  (Tr. 52)

Plaintiff testified that he tries to ride his horse once a week, but he usually only rides his horse once every three weeks.  (Tr. 53)  The day before the hearing, Plaintiff explained how he helped his wife clean and rearrange the house, but this activity aggravated his back and knee pain.  (Tr. 54)  Plaintiff testified that within the last six months, his primary care provider at the VA recommended that he use a cane.[3]  (Tr. 54-55)

In a typical day, Plaintiff sleeps between eight to fifteen hours.  (Tr. 56)  Plaintiff explained that he sets alarms to remind him to eat, to care for the dog, and to take his medicine.  (Tr. 55-56)  Plaintiff helps around the house by doing the dishes, taking care of the dog, cooking, and cleaning the counters.  (Tr. 57-58)  Once a month, Plaintiff and his wife host a game night at their house for six people.  (Id.)

Plaintiff testified that he receives treatment for his mental issues at the VA, including unsuccessful cognitive processing therapy for his PTSD.  (Tr. 48)  Mr. Lee, a counselor, has treated Plaintiff at the VA since September 2017, and Mr. Lee has helped Plaintiff identify his stress triggers.  (Tr. 48-49)  Within the last month, Plaintiff testified he started taking Escitalopram.  (Tr.

_____

[3] The ALJ noted this recommendation is not documented  in Dr. Jones' treatment note.  Indeed during his only visit, Dr. Jones noted that Plaintiff was ambulatory with a steady gait without an assistive device.

49)  Although the medication has helped Plaintiff, he testified that he still cannot not deal with normal life.  (Tr. 39)

**B.**    **The VE's Testimony**

The ALJ identified customer service representative, horse shoer, protective officer, route delivery driver, and an automobile sales person as Plaintiff's past relevant work.  (Tr. 61-62)  The ALJ asked the VE a series of hypothetical questions to determine whether someone with Plaintiff's work experience and specific functional limitations would be able to perform Plaintiff's past relevant work.  (Tr. 63)  The VE responded that such a hypothetical person could not perform the required functions of Plaintiff's past work.

The VE further testified that the hypothetical person would be able to perform jobs in the national economy, such as a housekeeper, a hand packaging professional, an inspector, and a hand packager.  (Tr. 63-64)  The ALJ then added the limitations that person would be unable to interact with the public in the course of his job duties and could occasionally interact with coworkers.  (Tr. 64)  The VE indicated that such limitations would not impact the person from performing the jobs he identified because the jobs do not require public interaction.  (Tr. 64)

In response to counsel's proposed second hypothetical, adding occasional interaction with supervisors, the VE indicated this would not change the hypothetical person from performing the jobs he identified.  (Tr. 65)

**VI.**   **The ALJ's Decision**

In a decision dated May 23, 2018, the ALJ determined that Plaintiff was not disabled under the Social Security Act.  (Tr. 12-20)  In finding that Plaintiff had not engaged in substantial gainful activity since April 27, 2015, the alleged onset date, the ALJ determined that Plaintiff's brief employment as a car salesman, call center support specialist, and route sales representative were

unsuccessful work attempts, and his employment as the owner of a farrier business was not substantial gainful activity. (Tr. 14-15)

The ALJ explained that he would not consider Plaintiff's VA rating because his application was filed after March 27, 2017.[4] (Tr. 16, 25) The ALJ determined that Plaintiff had severe impairments of degenerative disc disease of the lumbar spine, major depressive disorder, social anxiety, and an adjustment disorder with mixed depression and anxiety. (Tr. 15)

The ALJ determined that Plaintiff had the RFC to perform a range of light work with the following modifications: (1) he can never climb ladders, ropes, or scaffolds; (2) he can occasionally stoop, kneel, crouch, and crawl; (3) he must avoid concentrated exposure to hazards; (4) he can understand and remember simple instructions; (5) he can attend to and carry out routine and repetitive tasks, but not at a production rate, e.g., assembly line work; (6) he can occasionally interact with the public and coworkers; and (7) he can respond to infrequent changes in an otherwise static work environment. (Tr. 20)

The ALJ found that Plaintiff's "statements concerning the intensity, persistence and limiting effects of these symptoms [of his medically determinable impairments] are not entirely consistent with the medical evidence and other evidence in the record…." (Tr. 21) Regarding Plaintiff's mental impairments, the ALJ found that Plaintiff "had been diagnosed with a variety of

---

[4] The SSA rescinded Social Security Ruling 06-03p on March 2017, because it was inconsistent with recent revisions to the SSA's rules regarding the evaluation of medical evidence, which were implemented on January 18, 2017. Social Security Ruling 96-2p, 2017 WL 3928305, at *1 (SSA Mar. 27, 2017). Specifically, the revised final rules "state that adjudicators will not provide any articulation about their consideration of decisions from other governmental agencies and nongovernmental entities because this evidence is inherently neither valuable nor persuasive to [the SSA]." Id. at *2. This rule applies only to "claims filed … on or after March 27, 2017." 20 C.F.R. § 404.1504. Thus, Plaintiff's claim filed on October 12, 2017, is not governed by Social Security Ruling 06-03p, and the ALJ properly refused to consider Plaintiff's VA disability rating. (Tr. 39)

affective, anxiety and adjustment disorders by various medial professionals. Many examples of these conditions are reported in the medical evidence of record and the longitudinal history supports a finding of life stressors and traumatic events that have contributed to these diagnoses, primarily the incident that led to his retirement from the service…." (Tr. 24)

The ALJ specifically considered Mr. Lee's opinions in his medical source statement regarding Plaintiff's marked limitations in most aspects of social functioning. The ALJ found those opinions to be somewhat persuasive to the extent that they are consistent with the "paragraph B" criteria and the RFC, noting that Mr. Lee had treated Plaintiff on a few occasions in five months. As to Plaintiff's functional limitations, the ALJ opined that Mr. Lee's opinions were inconsistent with his clinical observations, Dr. Wahl's clinical observations, and Plaintiff's ability, after the alleged onset date of disability, to attend "a six-month farrier course in which he interacted with other students and the teacher and worked at a variety of jobs at which he interacted with coworkers, supervisors, and the general public." (Tr. 24) The ALJ also specifically considered Dr. Coffman's finding that, although Plaintiff had tolerated farrier work until recently, the current examination and findings would not preclude all types of sedentary and active work because of lumbosacral strain and back pain. (Tr. 25) The ALJ also considered Dr. Wahl's diagnoses of recurrent, moderate major depressive disorder and a social anxiety disorder, including the opinion that both conditions impacted Plaintiff's social/occupational functioning to a moderate degree. The ALJ found that Dr. Wahl's opinion that Plaintiff's conditions impacted social/occupational functioning to a moderate degree is consistent with Plaintiff having few significant objective signs on examination and, at the time of the hearing, Plaintiff had not been treated by his psychiatrist since the initial visit on August 30, 2017, or by Mr. Lee since February 7, 2018. The ALJ found Drs. Wahl and Coffman's opinions to be persuasive. (Tr. 25)

With respect to Dr. Dennis McGraw, a state agency medical consultant, and Dr. Robert Cottone, a state agency psychological consultant, the ALJ found their opinions to be very persuasive to the extent they were consistent with the RFC, supported by the clinical findings of treating sources, and generally consistent with the preponderance of the evidence. Dr. McGraw opined that Plaintiff could perform work at the light exertional level with additional nonexertional limitations and supported his opinions with the clinical findings of treating sources showing few objective signs, findings on examinations, and x-ray images. Dr. Cottone opined that Plaintiff could understand, carry out, and persist at simple tasks; he could make simple work-related judgments; he could relate adequately to coworkers and supervisors; and he could adjust adequately to ordinary change in work routine or setting. The ALJ found that Dr. Cottone supported his opinions with the clinical findings of treating sources and generally consistent with the preponderance of the evidence, "that at the time of the May, 2018 hearing [Plaintiff] had not seen his psychiatrist since August 2017 or his therapist since February 2018." (Tr. 25)

The ALJ concluded that Plaintiff could not return to his past relevant work. (Tr. 26) The ALJ proceeded to step 5 and found, based on the VE's testimony, that there are other jobs existing in the national economy he was able to perform the requirements of representative occupation such as cleaner, housekeeper, hand packaging, hand bander, inspector, and hand packager. Based on hypothetical questions posed to the VE, the ALJ found that Plaintiff was not under a disability within the meaning of the Social Security Act because someone with his age, education and functional limitations could perform other work that existed in substantial numbers in the national economy. (Tr. 27)

The ALJ's decision is discussed in greater detail below in the context of the issues Plaintiff has raised in this matter.

## VII. **Standard of Review and Legal Framework**

"To be eligible for … benefits, [Plaintiff] must prove that [he] is disabled …." Baker v. Sec'y of Health and Human Servs., 955 F.2d 552, 555 (8th Cir. 1992); see also Pearsall v. Massanari, 274 F.3d 1211, 1217 (8th Cir. 2001).  Under the Act, a disability is defined as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. §§ 423(d)(1)(A) and 1382c (a)(3)(A).  A plaintiff will be found to have a disability "only if [his] physical or mental impairment or impairments are of such severity that [he] is not only unable to do [her] previous work but cannot, considering [his] age, education and work experience, engage in any other kind of substantial gainful work which exists in the national economy." 42 U.S.C. § 423(d)(2)(A) and 1382c(a)(3)(B).  See also Bowen v. Yuckert, 482 U.S. 137, 140 (1987).

Per regulations promulgated by the Commissioner, 20 C.F.R § 404.1520, "[t]he ALJ follows 'the familiar five-step process' to determine whether an individual is disabled…. The ALJ consider[s] whether:  (1) the claimant was employed; (2) [he] was severely impaired; (3) [his] impairment was, or was comparable to, a listed impairment; (4) [he] could perform past relevant work; and if not, (5) whether [he] could perform any other kind of work." Martise v. Astrue, 641 F.3d 909, 921 (8th Cir. 2011) (quoting Halverson v. Astrue, 600 F.3d 922, 929 (8th Cir. 2010)). See also Bowen, 482 U.S. at 140-42 (explaining the five-step process).

The Eighth Circuit has repeatedly emphasized that a district court's review of an ALJ's disability determination is intended to be narrow and that courts should "defer heavily to the findings and conclusions of the Social Security Administration." Hurd v. Astrue, 621 F.3d 734, 738 (8th Cir. 2010) (quoting Howard v. Massanari, 255 F.3d 577, 581 (8th Cir. 2001)).  The ALJ's

findings should be affirmed if they are supported by "substantial evidence" on the record as a whole.  See Finch v. Astrue, 547 F.3d 933, 935 (8th Cir. 2008).  Substantial evidence is "less than a preponderance, but enough that a reasonable mind might accept it as adequate to support a decision."  Juszczyk v. Astrue, 542 F.3d 626, 631 (8th Cir. 2008); see also Wildman v. Astrue, 596 F.3d 959, 965 (8th Cir. 2010) (same).

Despite this deferential stance, a district court's review must be "more than an examination of the record for the existence of substantial evidence in support of the Commissioner's decision."  Beckley v. Apfel, 152 F.3d 1056, 1059 (8th Cir. 1998).  The district court must "also take into account whatever in the record fairly detracts from that decision."  Id.  Specifically, in reviewing the Commissioner's decision, a district court is required to examine the entire administrative record and consider:

1. The credibility findings made by the ALJ.
2. The claimant's vocational factors.
3. The medical evidence from treating and consulting physicians.
4. The claimant's subjective complaints relating to exertional and non-exertional activities and impairments.
5. Any corroboration by third parties of the claimant's impairments.
6. The testimony of vocational experts, when required, which is based upon a proper hypothetical question which sets forth the claimant's impairment.

Stewart v. Sec'y of Health & Human Servs., 957 F.2d 581, 585-86 (8th Cir. 1992) (citation omitted).

Finally, a reviewing court should not disturb the ALJ's decision unless it falls outside the available "zone of choice" defined by the evidence of record.  Buckner v. Astrue, 646 F.3d 549, 556 (8th Cir. 2011).  A decision does not fall outside that zone simply because the reviewing court might have reached a different conclusion had it been the finder of fact in the first instance.  Id.; see also McNamara v. Astrue, 590 F.3d 607, 610 (8th Cir. 2010) (explaining that if substantial evidence supports the Commissioner's decision, the court "may not reverse, even if inconsistent

conclusions may be drawn from the evidence, and [the court] may have reached a different outcome").

## VIII. <u>Analysis of Issues Presented</u>

In his brief to this Court, Plaintiff challenges:  (1) the ALJ's use of his unsuccessful work attempts as evidence showing his ability to work, and (2) the ALJ's consideration of the medical and opinion evidence in determining Plaintiff's RFC determination.

### A. <u>Unsuccessful Work Attempts</u>

Plaintiff argues that the ALJ erred in using his unsuccessful work attempts as evidence of his ability to adequately understand, remember or apply information; interact with others; concentrate, persist, or maintain pace; and adapt or manage himself.

An unsuccessful work attempt is an attempt to return to work after the onset of disability that later proves unsuccessful.  20 C.F.R. § 404.1574(c).  Although the ALJ may not consider an unsuccessful work attempt in determining whether a claimant has engaged in substantial gainful activity, 20 C.F.R. § 404.1574(a), an ALJ may consider an unsuccessful work attempt in assessing a claimant's RFC.  20 C.F.R. § 1571 ("Even if the work you have done was not substantial gainful activity, it may show that you are able to do more work than you actually did."); SSR 96-8p, 1996 WL 374184, at *5 (stating that RFC assessment must be based on all relevant evidence, including [e]vidence from attempts to work.").  "An unsuccessful work attempt may offer insight into what a plaintiff can do as well as what a plaintiff cannot do."  <u>Rowland v. Colvin</u>, 2014 WL 2215884, *11 (W.D. Va. May 29, 2014) (finding courts have reversed ALJ's decisions that failed to adequately consider unsuccessful work attempts in assessing a plaintiff's RFC).

Plaintiff fails to cite any authority to support his contention that, as a matter of law, an unsuccessful work attempt cannot be considered by the ALJ as evidence in evaluating the RFC.

Plaintiff's work after his alleged onset date, even if it is an unsuccessful attempt and not substantial gainful activity, can be considered as relevant evidence at steps 4 and 5 of the sequential evaluation process.  20 C.F.R. § 1571.

The ALJ explained that, contrary to Plaintiff's allegations of his conditions affecting his ability to interact with others, since his alleged onset date of disability, Plaintiff completed a six-month farrier program finishing at the top of his class, worked as a car salesman, a customer service representative, a deliver route driver, and a farrier and operated his own business.  The ALJ opined that Plaintiff's ability to complete such activities showed "he was able to get along with other students, teachers, coworkers, supervisors and the general public."[5]  (Tr. 19)  The ALJ properly considered Plaintiff's unsuccessful work efforts as additional evidence to support his finding that Plaintiff has the RFC to perform a range of light work with additional functional limitations.  See Social Security Ruling 96-8p, 1196 WL 374184 at *4 (stating RFC assessment must be based on all relevant evidence, including "[e]vidence from attempts to work."). Used as such, evidence of unsuccessful work attempts is not conclusive proof of Plaintiff's ability to work, but is only one piece of evidence to be considered with the other evidence to determine whether Plaintiff is able to work.

Here, the ALJ relied primarily on the medical evidence in the record to determine that Plaintiff is capable of a range of light work.  See Bentley v. Shalala, 52 F.3d 784, 785 (8th Cir. 1995) (finding in cases where the medical evidence of the plaintiff's disability is inconsistent, work attempts may be relevant as circumstantial evidence that the plaintiff did not view his pain as disabling.).  Plaintiff's work attempts tend to support this finding because they show both his

---

[5] The ALJ further noted that Plaintiff met his wife while working together; he lives with his wife and two roommates, and they host games nights at their house with five other people; and he plays online games with as many as ten other people.

mental and physical abilities. Accordingly, the Court holds that the ALJ did not err in considering

Plaintiff's unsuccessful work attempts as an additional, but not sole, reason for concluding that

Plaintiff is not disabled. See, e.g., Dunahoo v. Apfel, 241 F.3d 1033, 1038-39 (8th Cir. 2001)

(claimant "[s]eeking work and working at a job [part-time] while applying for benefits" was factor

"inconsistent with complaints of disabling pain.").

**B.      Residual Functional Capacity**

Plaintiff argues that the ALJ's RFC is not supported by substantial evidence, because the

ALJ failed to accord proper weight to the opinion evidence. At the time of the ALJ's decision,

there were two mental health opinions in Plaintiff's record, one from Mr. Lee, a licensed clinical

worker[6] and one from Dr. Cottone, a one-time state, consultative examiner.

A claimant's RFC is the most an individual can do despite the combined effects of his

credible limitations. See 20 C.F.R. § 404.1545(a)(1). "The RFC 'is a function-by-function

assessment based upon all of the relevant evidence of an individual's ability to do work-related

activities.'" Roberson v. Astrue, 481 F.3d 1020, 1023 (8th Cir. 2007) (quoting SSR 96-8p, 1996

WL 374184, at *3 (S.S.A. 1996)). An ALJ's RFC finding is based on all of the record evidence,

the claimant's testimony regarding symptoms and limitations, the claimant's medical treatment

---

[6] As a licensed clinical social worker, he was not an acceptable medical source. See 20 C.F.R. §§ 404.1513, 416.913. "Information from these other sources cannot establish the existence of a medically determinable impairment. Instead, there must be evidence from an 'acceptable medical source' for this purpose." SSR 06-03p, 2006 WL 2329939. "[I]nformation from such other sources, [however,] may be based on special knowledge of the individual and may provide insight into the severity of the impairment(s) and how it affects the individual's ability to function." 20 C.F.R. § 416.913(d). "Evidence provided by 'other sources' must be considered by the ALJ; however, the ALJ is permitted to discount such evidence if it is inconsistent with the evidence in the record." Lawson v. Colvin, 807 F.3d 962, 967 (8th Cir. 2015); see also Raney v. Barnhart, 396 F.3d 1007, 1010 (8th Cir. 2005) (in determining what weight to give to other evidence, the ALJ has more discretion and is permitted to consider any inconsistencies found within the record.).

records, and the medical opinion evidence.  See Wildman, 596 F.3d at 969; see also 20 C.F.R. § 404.1545; SSR 96-8p (listing factors to be considered when assessing a claimant's RFC, including medical source statements, recorded observations, and "effects of symptoms … that are reasonably attributed to a medically determinable impairment") and 20 C.F.R. § 404.1545(a)(1) ("We will assess your residual functional capacity based on all the relevant evidence in your case record."). The ALJ must explain her assessment of the RFC with specific references to the record.  SSR 96-8 (the RFC assessment must cite "specific medical facts (e.g., laboratory findings) and nonmedical evidence (e.g., daily activities, observations)" in describing how the evidence supports each conclusion).  Throughout this inquiry, the burden of persuasion to prove disability and to demonstrate RFC is on the claimant.  Hensley v. Colvin, 829 F.3d 926, 932 (8th Cir. 2016).  "In evaluating a claimant's RFC, an ALJ is not limited to considering medical sources for support, it is ultimately an administrative determination reserved to the Commissioner."  Id. (internal citation omitted).

Mr. Lee completed an MSS regarding Plaintiff's mental impairments.  In particular, Mr. Lee opined that Plaintiff has no limitations in his ability understand, remember, and carry out instructions, but marked limitations in most aspects of social functioning, such as his ability to respond to supervisors, coworkers, and work pressure.  Mr. Lee further opined that Plaintiff has difficulty interacting with others and would become emotionally dysregulated, resulting in Plaintiff being unable to function in a work environment or with others.  Mr. Lee also opined Plaintiff becomes overwhelmed, angry, and unable to function in a work-setting when he cannot process information in a timely manner.

The ALJ found Mr. Lee's opinions to be somewhat persuasive to the extent they were consistent with the "paragraph B" criteria and the RFC.  The ALJ noted that Mr. Lee's opinions

were based upon a brief treating relationship, a total of five visits in three months, with Plaintiff before setting forth his opinions. <u>See</u> 20 C.F.R. § 404.1520c(3)(i)-(ii) (length of treatment relationship and frequency of examination are factors to consider in evaluating the persuasiveness of a medical opinion.). Additionally, the ALJ found Mr. Lee's opinions were generally inconsistent with his clinical observations and Dr. Wahl's clinical observations, as well as his benign mental status examinations, and with the evidence of unsuccessful work attempts after the alleged onset date of disability at which he interacted with coworkers, supervisors, and the general public, and his ability to complete a six-month farrier course in which he interacted with other students and the teacher. A review of the record lends substantial evidentiary support to the ALJ's treatment of Mr. Lee's opinions – it was inconsistent with some of his own clinical observations, as well as the clinical observations of Dr. Wahl and other evidence in the record, including Plaintiff's own activities.

Plaintiff next argues that the ALJ erred in affording very persuasive weight to the opinions of state agency psychological consultant Dr. Cottone, because Dr. Cottone had no relationship with Plaintiff, and the ALJ did not consider the combined effect of the multiple, moderate limitations found by Dr. Cottone.

Dr. Cottone expressed the opinion that Plaintiff had moderate difficulties in his ability to work in coordination with or in proximity to others, to carry out detailed instructions, to understand and remember detailed instructions, to interact with general public, and to accept instructions and respond appropriately to criticism from supervisors. Dr. Cottone explained that Plaintiff "can relate acceptably to others at a basic level, but will be best suited for a job with moderately limited social demands."

The ALJ indicated that he was assigning very persuasive weight to Dr. Cottone's opinions, as they were based on his review of the medical record and supported by treating source's clinical findings and generally consistent with the preponderance of the evidence, "that at the time of the May, 2018 hearing the claimant had not seen his psychiatrist since August 2017 or his therapist since February 2018."[7]  (Tr. 25)  The ALJ noted that Dr. Cottone is specialized in the field of psychology, and he "has specialized experience and programmatic knowledge and is familiar with agency definitions and evidentiary standards."  (Id.)

"State agency medical and psychological consultants and other program physicians, psychologists, and other medical specialists are highly qualified physicians, psychologists, and other medical specialists who are also experts in Social Security disability evaluation."  20 C.F.R. § 416927(e)(2)(i).  "Therefore, administrative law judges must consider findings and other opinions of State agency medical and psychological consultants and other program physicians, psychologists, and other medical specialists as opinion evidence," except for the determination of disability.  20 C.F.R. §§ 416.913a(b)(1), 416.927(e).  "Administrative law judges are not bound by any findings made by State agency medical or psychological consultants or other program physicians or psychologists."  20 C.F.R. § 416.927(c).

Here, the ALJ provided sufficient reasons for assigning very persuasive weight to Dr. Cottone's opinions.  Dr. Cottone summarized the records of the mental health treatment Plaintiff had received through counseling and medications.  (Tr. 72)  This evidence revealed Plaintiff sought infrequent mental health treatment, and few abnormalities were noted on examination.  It is true that this Court cannot consider the opinions of a non-examining, consultant physician standing

---

[7] Despite alleging a disability onset of April 15, 2017, the medical record shows that Plaintiff had not seen psychiatrist Dr. Sunny since his initial visit on August 30, 2017, although Dr. Sunny scheduled him for follow-up treatment in three months.  (Tr. 334, 378)

alone to be substantial evidence.  Jenkins v. Apfel, 196 F.3d 922,925 (8th Cir. 1999) (finding that

if no other evidence supported an ALJ's RFC determination, the opinion of a non-examining

consulting physician was not "considered substantial evidence in the face of the conflicting

assessment of a treating physician.").  The ALJ did not solely rely on Dr. Cottone's opinions to

reach the conclusion.  Dr. Cottone's  opinions were treated as part of the record, which as a whole

provides substantial support for the ALJ's findings.  When "[t]he state agency physicians' opinions

were consistent with other medical evidence," the ALJ could "rely on them, in part, in formulating

[a claimant's] RFC."  See Mabry v. Colvin, 815 F.3d 386, 391 (8tn Cir. 2016).  The ALJ considered

and discussed at length other received evidence when reaching his decision.  Dr. Cottone's opinions

and other evidence in the record are not inconsistent.  The ALJ was entitled to assign weight to the

opinion of Dr. Cottone, as a highly qualified expert in disability determinations.

The ALJ concluded that Plaintiff had the mental RFC to perform routine  and repetitive

tasks, to occasionally interact with the public and coworkers, and to respond to infrequent changes

in an otherwise static work environment.  This finding is supported by the evidence of record

showing his cooperation with treatment providers and his demonstrated ability to interact with

others during the alleged period of disability.  The objective medical record does not demonstrate

the presence of greater limitations than those found by the ALJ.[8]  Thus, the ALJ's RFC finding is

---

[8] Although Dr. Wahl opined that Plaintiff had difficulty in establishing and maintaining effective
work and social relationships and difficulty in adapting to stressful circumstances, including
work or work-like setting, she found Plaintiff's functional impairments to be moderate. The ALJ
found Dr. Wahl's opinions to be persuasive and consistent with the benign mental status
examination findings and minimal treatment of his mental impairments.  The ALJ properly
evaluated the consistency of Dr. Wahl's opinions when determining its persuasiveness.  20
C.F.R. § 404.1520c(c)(2) ("The more consistent a medical opinion(s) … is with the evidence
from other medical sources and nonmedical sources in the claim, the more persuasive the
medical opinion(s) … will be.").  Although Plaintiff disagrees with Dr. Wahl's opinions and
asserts that the objective record is inconsistent with her opinions, the possibility that the Court
could draw two inconsistent conclusions from the same record does not prevent a particular

supported by substantial evidence on the records as a whole because "a reasonable mind would find [the evidence] adequate to support the Commissioner's conclusion." Ash v. Colvin, 812 F.3d 686, 689 (8th Cir. 2016) (citation omitted). Because the ALJ based his RFC assessment upon review of all the credible, relevant evidence of record, and the RFC is supported by some medical evidence, it will not be disturbed. See Baldwin v. Barnhart, 349 F.3d 549, 558 (8th Cir. 2003). Substantial evidence supports the ALJ's finding that Plaintiff had the RFC to perform a range of light work with additional limitations.

## IX. Conclusion

For the foregoing reasons, the Court finds that the ALJ's determination is supported by substantial evidence on the record as a whole. See Finch, 547 F.3d at 935. Similarly, the Court cannot say that the ALJ's determinations in this regard fall outside the available "zone of choice," defined by the record in this case. See Buckner, 646 F.3d at 556. For the reasons set forth above, the Commissioner's decision denying benefits is affirmed. Accordingly,

**IT IS HEREBY ORDERED** that the decision of the Commissioner be **AFFIRMED**.

A separate Judgment shall accompany this Memorandum and Order.

/s/ *John M. Bodenhausen*
JOHN M. BODENHAUSEN
UNITED STATES MAGISTRATE JUDGE

Dated this 4th day of March, 2020.

---

finding from being supported by substantial evidence. Milam v. Colvin, 794 F.3d 978, 983 (8th Cir. 2015) ("We must consider evidence that both supports and detracts from the ALJ's decision, but we will not reverse an administrative decision simply because some evidence may support the opposite conclusion. Indeed, we must affirm the denial of benefits if it is possible to draw two inconsistent positions from the evidence and one of those positions represents the ALJ's findings.") (internal quotations and citations omitted).